UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:3:20-CV-969-J-34MCR

TOMAS R. WEST

     Plaintiff,

v.

UNIVERSITY OF NORTH FLORIDA
FOUNDATION, INC.

     Defendant,

_____/

## **FIRST AMENDED COMPLAINT**

COMES NOW the Plaintiff TOMAS R. WEST by and through undersigned counsel, hereby sues Defendant UNIVERSITY OF NORTH FLORIDA FOUNDATION, INC., on the grounds set forth herein.

### INTRODUCTION

1. This is an action by Plaintiff TOMAS R. WEST under Section 1981 of the Civil Rights Act of 1866 (Section 1981), to redress the injury done to him by the Defendant's discriminatory treatment and retaliation based on his Race and Color (Black).

### JURISDICTION AND VENUE

2. This is an action for damages brought in excess of $15,000.00, exclusive of interest, attorney's fees, and costs.

3. This action is authorized and instituted pursuant to Section 1981 of the Civil Rights Act of 1866 (Section 1981), as amended.

4. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and §1343.

5. The venue of this action is properly placed in the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. §1391(b), since the unlawful alleged employment practices, were committed in Duval County, within the jurisdiction of this Honorable Court.

<u>PARTIES</u>

6. Plaintiff TOMAS R. WEST is a 32-year-old Black, or African American male, resident of Duval County, who was employed by Defendant UNIVERSITY OF NORTH FLORIDA FOUNDATION, INC.  Plaintiff is a member of certain protected classes of persons under 42 U.S.C. §1981, because of his Race and Color.

7. Corporate Defendant UNIVERSITY OF NORTH FLORIDA FOUNDATION, INC. (hereinafter the UNIVERSITY OF NORTH FLORIDA, or "Defendant"), is a Not for Profit corporation authorized to conduct business in the State of Florida, and within the jurisdiction of this Court.

8. At all times relevant to this complaint, Plaintiff TOMAS R. WEST was employed by the UNIVERSITY OF NORTH FLORIDA and the parties had a contractual relationship with each other.

<u>STATEMENT OF FACTS</u>

9. Plaintiff TOMAS R. WEST is a 32-year-old Black, or African American male, resident of Duval County, who was employed by the Defendant UNIVERSITY OF NORTH FLORIDA. Plaintiff is a member of certain protected classes of persons under 42 U.S.C. §1981, because of his Race and Color (Black).

10. The Defendant UNIVERSITY OF NORTH FLORIDA is an institution of high learning located at 1 UNF Drive, Jacksonville, Florida 32224, where Plaintiff worked.

11. The Defendant UNIVERSITY OF NORTH FLORIDA employed Plaintiff TOMAS R. WEST as a maintenance technician from approximately February 24, 2020, to July 28, 2020, or 5 months. (22 weeks).

12. The Plaintiff was a full-time employee, earning approximately $13.34 an hour.

13. Throughout his employment with the Defendant, the Plaintiff performed his duties in an exemplary fashion.  The Plaintiff possessed all the required skills, training, and qualifications for the job in question, and performed his duties without significant issue or controversy. The Plaintiff was a good maintenance employee.

14. However, during the time Plaintiff was employed by the Defendant, Plaintiff was subjected to unlawful acts of discrimination such as harassment, hostile working environment, and was further subjected to different terms and conditions of employment, and finally, he was subjected to a discriminatory discharge because of his Race and Color.

15. Almost Since the beginning of his employment Plaintiff perceived that he was discriminated against because of his Race and Color.  When the Plaintiff began to work, he knew about a recently hired White employee, who was hired as a temporary employee, after 2 weeks into his work, Plaintiff learned that the White employee was put on a permanent position.

16. At his hiring, Plaintiff was put on notice that the University had 6 months of probationary period before he could get a permanent position.

17. Plaintiff decided to ask about the possibility of getting a permanent position earlier than anticipated, and he talked to Samantha Lento, supervisor Jan Lindahl, and Assistant Maintenance Director Steve Crews. Plaintiff requested to be changed to permanent employee status, but he never received a straight answer.

18. Plaintiff felt ignored and discriminated against, and he was convinced that the reason for the silence was racism. Specifically, Plaintiff alleges that he was treated differently from other similarly situated co-worker outside his protected class by not considering him for a permanent position due to his Race and Color.

19. At the same time, Plaintiff was discriminated against and harassed based on basis of his Race and Color by a co-worker, Plaintiff complained many times to his supervisors, but they did not take any corrective action. Instead, they wrongfully discharged Plaintiff due to his complaints of Race and Color Discrimination.

20. The Plaintiff suffered a disrespectful and abusive treatment at the hands of his co-worker Mitch Arthur (White). The Plaintiff was subjected to highly offensive, derogatory, and discriminatory remarks and comments about his Race and Color.

21. For example, on or about May 11, 2020, while Plaintiff was working on the shop, Mitch Arthur (White) began making unwelcome racial comments against Plaintiff. On this day, Mitch Arthur also told Plaintiff contemptuously: "Your kind sweats so much, we work harder and sweat less" Plaintiff was humiliated and perplexed by his statement.

22. The next day, Plaintiff complained to his direct supervisor Jan Lindahl. Plaintiff complained about the discrimination and harassment based on Race and Color that

he was suffering at the hands of his co-worker Mitch Arthur. The supervisor promised Plaintiff that he would take care of the problem.

23. After Plaintiff's complaint, it was obvious for the Plaintiff that nothing happened, there was not any corrective action or sanction for Mitch Arthur, there was not any open investigation about Plaintiff's complaints. On the contrary, it seems to be that Mitch Arthur found out about Plaintiff's complaint and increased his harassment in a retaliatory way.

24. Plaintiff complained multiple times about the wrongful conduct of Mitch Arthur to his supervisor, but he did not get any relief.

25. On about June 10, 2020, Plaintiff had arrived early to work because he wanted to beat traffic. As soon as Mitch Arthur saw the Plaintiff, he said, "What are you, a poor black that has no place to live?". At the end of June 2020, Mitch Arthur told Plaintiff after he saw his car: "Your people steal nice and fancy cars".

26. The frequent, severe, and offensive conduct of Mitch Arthur and the indifference of the supervisor about the Plaintiff's complaints of racial discrimination and harassment created a hostile work environment for Plaintiff, in violation of 42 U.S.C. §1981.

27. Plaintiff felt harassed, unwelcome, uncomfortable, humiliated, and intimidated in his place of work. The Plaintiff knew that his superiors did not like him because he was Black, and they were not putting a halt to the harassment he was subjected to.

28. On or about June 11, 2020, Plaintiff complained to Assistant Maintenance Director Steve Crews that he was being targeted and racially discriminated, he responded by saying, "We do not tolerate racism here, I will look into it". This time again, nothing

happened, and Plaintiff continued suffering harassment because of his Race and Color.

29. These complaints constituted protected activity under Federal and State law.

30. The Defendant never opened an investigation about the harassment and Race and Color discrimination alleged by Plaintiff, and after each complaint, Plaintiff suffered more harassment.

31. The Plaintiff's managers allowed discrimination and harassment and promoted an unfriendly interaction and relationship between Plaintiff and his co-workers.

32. On or about July 27, 2020, in the afternoon, Plaintiff accidentally misplaced a work order that they had to do. Plaintiff tried to fix the problem the best he could and wrote down a list of the work orders. When Mitch Arthur asked Plaintiff for the list, he looked at the note and told Plaintiff: "you fu……idiot, you missed something", then, Mitch Arthur continued "you missed something on the list, stupid ni…. go back and fix the list".  Plaintiff apologized, but Mitch Arthur got furious, he verbally assaulted Plaintiff yelling and screaming at him all kind of racial slurs, and vulgarities slamming his hand on the desk and approaching to him with clenched fists in a threatening way.  Plaintiff was afraid for his physical integrity and asked Mitch Arthur to stop several times.

33. Plaintiff intended to complain to a supervisor, but no one was available, and due to Coronavirus disruption, the Human Resources office was closed, the Plaintiff could not complain and report the verbal aggression of Mitch Arthur on the same day and he went home without complaining.

34. The next day, early on July 28, 2020, Plaintiff was called by Assistant Director Steve Crews to talk to him. Plaintiff thought it was good for him because he wanted to complain again and inform Steve Crews about the incident with Mitch Arthur that happened the day before.

35. To Plaintiff's surprise, Assistant Maintenance Director Steve Crews fired Plaintiff by saying that "Things did not work out". Plaintiff told Steve Crews that he wanted to complain again because Mitch Arthur continued discriminating and harassing him based on his Race and Color, and reminded Steve Crews about how many times he had complained about being discriminated against and harassed because of his Race and Color.

36. However, Assistant Maintenance Director Steve Crews refused to hear any discrimination complaint and responded by saying "This is not about that, you are fired". Mr. Steve Crews never provided Plaintiff with a specific reason for his termination, he did not any specific problem with Plaintiff he did not refer to any skills or performance problems.

37. Plaintiff was required to return some property and equipment from the Defendant, and he was also handed a letter requesting the return of uniforms and cellphone. Plaintiff did not realize until he got home that the termination letter was dated July 22, 2020, which was not the actual date for his dismissal. Plaintiff thought that he was already singled out unfairly for termination.

38. At the time of the unlawful discrimination, the Plaintiff did perform and excel at the performance of the essential functions assigned to him by the Defendant.

39. On or about July 28, 2020, the Plaintiff was wrongfully discharged by the Defendant and his human and civil rights were violated. The Plaintiff's discharge was directly and proximately caused by the Defendant's unjustified discrimination and harassment because of Plaintiff's Race and Color, in violation of both Federal and State Laws.

40. Moreover, the Plaintiff's termination came just in temporal proximity after Plaintiff participated in the protected activity on June 11, 2020.

41. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged. The Plaintiff suffered serious economic losses as well as mental pain and suffering, which was detrimental to the Plaintiff's health.

42. The Defendant UNIVERSITY OF NORTH FLORIDA  is subjected to vicarious liability for the actions of its management because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which the Plaintiff was subjected to despite Defendant's knowledge that such discrimination, harassment, was occurring.

**<u>COUNT I:</u>**
**<u>VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. SECTION 1981,</u>**
**<u>DISCRIMINATION BASED ON RACE AND COLOR;</u>**
**<u>HOSTILE WORKING ENVIRONMENT</u>**

43. Plaintiff TOMAS R. WEST re-adopts every factual allegation as stated in paragraphs 1-14 and 18-38 above, as if set out in full herein.

44. This is an action against UNIVERSITY OF NORTH FLORIDA, for unlawful discrimination pursuant to 42 U.S.C., Section 1981.

45. At all times material hereto the Defendant UNIVERSITY OF NORTH FLORIDA was an "employer" within the meaning of Section 42 U.S.C. §1981.

46. At all times material hereto, Plaintiff TOMAS R. WEST was an "employee" and had a contractual relationship with the Defendant within the meaning of 42 U.S.C. §1981.

47. Plaintiff TOMAS R. WEST had at all times material, and continue to have, a federally protected constitutional right to make and enforce contracts, to sue, to be parties, to give evidence, and to be free from racially-based discrimination while bargaining, negotiating, or entering into a contract, including the enjoyment of all benefits, privileges terms and conditions of the contractual relationship of his employment at the UNIVERSITY OF NORTH FLORIDA.

48. The Defendant UNIVERSITY OF NORTH FLORIDA has intentionally engaged in unlawful employment practices and discrimination, in violation of 42 U.S.C. § 1981, because of his Race and Color.

49. Plaintiff was discriminated against and harassed based on basis of his Race and Color by a co-worker, Plaintiff complained many times to his supervisors, but they did not take any corrective action. Instead, they wrongfully discharged Plaintiff due to his complaints of Race and Color Discrimination.

50. The Plaintiff suffered a disrespectful and abusive treatment at the hands of his co-worker Mitch Arthur (White). The Plaintiff was subjected to highly offensive, derogatory, and discriminatory remarks and comments about his Race and Color.

51. Co-worker Mitch Arthur made frequent, unwelcomed, racist, and offensive remarks such as: "Your kind sweats so much, we work harder and sweat less"; "What are you, a poor black that has no place to live?"; "Your people steal nice and

fancy cars", and many other racially charged comments.  Plaintiff was humiliated and perplexed by these statements.

52. Plaintiff complained to his direct supervisor Jan Lindahl many times. Plaintiff complained about the discrimination and harassment based on Race and Color that he was suffering at the hands of his co-worker Mitch Arthur.  The supervisor promised Plaintiff that he would take care of the problem, but Plaintiff did not get any relief.

53. The frequent, severe, and offensive conduct of Mitch Arthur and the indifference of the supervisor about the Plaintiff's complaints of racial discrimination and harassment created a hostile work environment for Plaintiff, in violation of 42 U.S.C. §1981.

54. Plaintiff felt harassed, unwelcome, uncomfortable, humiliated, and intimidated in his place of work. The Plaintiff knew that his superiors did not like him because he was Black, and they were not putting a halt to the harassment he was subjected to.

55. On or about June 11, 2020, Plaintiff complained to  Assistant Maintenance Director Steve Crews that I was being targeted and racially discriminated, he responded by saying, "We do not tolerate racism here, I will look into it". This time again, nothing happened, and Plaintiff continued suffering harassment because of his Race and Color.

56. After each complaint it was obvious for the Plaintiff that nothing happened, there was not any corrective action or sanction for Mitch Arthur, there was not any open investigation about Plaintiff's complaints. On the contrary, it seems to be that Mitch

Arthur found out about Plaintiff's complaint and increased his harassment in a retaliatory way.

57. The Defendant never opened an investigation about the harassment and Race and Color discrimination alleged by Plaintiff, and after each complaint, Plaintiff suffered more harassment.

58. The inaction of the Plaintiff's managers allowed discrimination and harassment and promoted an unfriendly interaction and relationship between co-workers.

59. On or about July 27, 2020, in the afternoon, Plaintiff accidentally misplaced a work order that they had to do. Plaintiff tried to fix the problem the best he could and wrote down a list of the work orders. When Mitch Arthur asked Plaintiff for the list, he looked at the note and told Plaintiff: "you fu……idiot, you missed something", then, Mitch Arthur continued "you missed something on the list, stupid ni…. go back and fix the list". Plaintiff apologized, but Mitch Arthur got furious, he verbally assaulted Plaintiff yelling and screaming at him all kind of racial slurs, and vulgarities slamming his hand on the desk and approaching to him with clenched fists in a threatening way.  Plaintiff was afraid for his physical integrity and asked Mitch Arthur to stop several times.

60. Plaintiff intended to complain to a supervisor, but no one was available, and due to Coronavirus disruption, the Human Resources office was closed, the Plaintiff could not complain and report the verbal aggression of Mitch Arthur on the same day and he went home without complaining.

61. The next day, early on July 28, 2020, Plaintiff was called by Assistant Director Steve Crews to talk to him.  Plaintiff thought it was good for him because he wanted

to complain again and inform Steve Crews about the incident with Mitch Arthur that happened the day before.

62. To Plaintiff's surprise, Assistant Maintenance Director Steve Crews fired Plaintiff by saying that "Things did not work out". Plaintiff told Steve Crews that he wanted to complain again because Mitch Arthur continued discriminating and harassing him based on his Race and Color, and reminded Steve Crews about how many times he had complained about being discriminated against and harassed because of his Race and Color.

63. However, Assistant Maintenance Director Steve Crews refused to hear any discrimination complaint and responded by saying "This is not about that, you are fired". Mr. Steve Crews never provided Plaintiff with a specific reason for his termination, he did not identify any specific problem with Plaintiff, and he did not refer to any skills or performance problems.

64. Plaintiff was required to return some property and equipment from the Defendant, and he was also handed a letter requesting the return of uniforms and cellphone. Plaintiff did not realize until he got home that the termination letter was dated July 22, 2020, which was not the actual date for his dismissal. Plaintiff thought that he was already singled out for unfair termination.

65. The effects of the practices referenced above have been to deprive the Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee, because of his Race and Color.

66. As a direct and proximate result of the intentional violations by the Defendant of the Plaintiff's rights under 42 U.S.C. § 1981, by subjecting him to racial harassment

because of his Race and Color.

67.  Plaintiff has suffered damages. His damages include back pay, front pay, loss of benefits, future pecuniary loss, inconvenience, emotional pain, suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

68. The Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages because of the Defendant's discriminatory practices unless and until this Court grants relief.

69. The actions of the Defendant UNIVERSITY OF NORTH FLORIDA  and/or agents were willful, wanton, intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages according to federal law, to punish the Defendant for their actions and to deter it, and others, from such actions in the future.

70. The Defendant UNIVERSITY OF NORTH FLORIDA  is subjected to vicarious liability for the actions of its management because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which the Plaintiff was subjected to despite Defendant's knowledge that such discrimination, harassment, was occurring.

71. Plaintiff TOMAS R. WEST has retained the undersigned counsel to prosecute his claims and he is entitled to attorney's fees pursuant to 42 U.S.C. §1988, the Civil Rights Attorneys Fee Award Act.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff TOMAS R. WEST respectfully requests that this Honorable Court:

A.  Enter judgment for Plaintiff TOMAS R. WEST and against the Defendant UNIVERSITY OF NORTH FLORIDA based on the Defendant's willful violations of 42 U.S.C. §1981; and

B.  Award Plaintiff compensatory damages including front pay, back pay, and lost benefits; and

C.  Award Plaintiff as to this count prejudgment interest; and

D.  Award Plaintiff damages for the costs of litigation and filing including attorney's fees; and

E.  Grant such other and further equitable relief as this court deems equitable and just and/or available pursuant to Federal Law including punitive damages.

<u>JURY TRIAL DEMAND</u>

Plaintiff TOMAS R. WEST demands trial by a jury of all issues triable as of right by a jury.

**<u>COUNT II:</u>**
**<u>VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. SECTION 1981,</u>**
**<u>DISCRIMINATION BASED ON RACE AND COLOR;</u>**
**<u>DISPARATE TREATMENT</u>**

72. Plaintiff TOMAS R. WEST re-adopts every factual allegation as stated in paragraphs 1-18 above as if set out in full herein.

73. This is an action against UNIVERSITY OF NORTH FLORIDA, for unlawful discrimination pursuant to 42 U.S.C., Section 1981.

74. At all times material hereto the Defendant UNIVERSITY OF NORTH FLORIDA was an "employer" within the meaning of Section 42 U.S.C. §1981.

75. At all times material hereto, Plaintiff TOMAS R. WEST was an "employee" and had a contractual relationship with the Defendant within the meaning of 42 U.S.C. §1981.

76. Plaintiff TOMAS R. WEST had at all times material, and continue to have, a federally protected constitutional right to make and enforce contracts, to sue, to be parties, to give evidence and to be free from racially-based discrimination while bargaining, negotiating, or entering into a contract, including the enjoyment of all benefits, privileges terms and conditions of the contractual relationship of his employment at the UNIVERSITY OF NORTH FLORIDA.

77. The Defendant UNIVERSITY OF NORTH FLORIDA has intentionally engaged in unlawful employment practices and discrimination, in violation of 42 U.S.C. § 1981, by treating the Plaintiff differently from similarly situated employees because of his Race and Color.

78. Almost Since the beginning of his employment Plaintiff perceived that he was discriminated against because of his Race and Color.  When the Plaintiff began to work, he knew about a recently hired White employee, who was hired as a temporary employee, after 2 weeks into his work, Plaintiff learned that the White employee was put on a permanent position.

79. At his hiring, Plaintiff was put on notice that the University had 6 months of probationary period before he could get a permanent position.

80. Plaintiff decided to ask about the possibility of getting a permanent position earlier than anticipated, and he talked to Samantha Lento, supervisor Jan Lindahl, and Assistant Maintenance Director Steve Crews.  Plaintiff requested to be changed to permanent employee status, but he never received a straight answer.

81.  Plaintiff felt ignored and discriminated against, and he was convinced that the reason for the silence was racism. Specifically, Plaintiff alleges that he was treated differently from other similarly situated co-worker outside his protected class by not considering him for a permanent position due to his Race and Color.

82. In addition, the Plaintiff suffered a disrespectful and abusive treatment at the hands of his co-worker Mitch Arthur (White). The Plaintiff was subjected to highly offensive, derogatory, and discriminatory remarks and comments about his Race and Color.  Plaintiff was humiliated and offended by these statements.

83. Plaintiff complained to his direct supervisor Jan Lindahl many times. Plaintiff complained about the discrimination and harassment based on Race and Color that he was suffering at the hands of his co-worker Mitch Arthur.  The supervisor promised Plaintiff that he would take care of the problem, but Plaintiff did not get any relief.

84. The frequent, severe, and offensive conduct of Mitch Arthur and the indifference of the supervisor about the Plaintiff's complaints of racial discrimination and harassment created a hostile work environment for Plaintiff, in violation of 42 U.S.C. §1981.

85. After each complaint it was obvious for the Plaintiff that nothing happened, there was not any corrective action or sanction for Mitch Arthur, there was not any open

investigation about Plaintiff's complaints. On the contrary, it seems to be that Mitch Arthur found out about Plaintiff's complaint and increased his harassment in a retaliatory way.

86. The Defendant never opened an investigation about the harassment and Race and Color discrimination alleged by Plaintiff, and after each complaint, Plaintiff suffered increased harassment.

87. The inaction of the Defendant allowed discrimination and harassment against Plaintiff to continue. As a consequence, Plaintiff was forced to complain many times hurting his advancing opportunities at the University and making him look like a troublemaker.

88. On or about July 28, 2020, at first time in the morning, Plaintiff was fired after suffering a verbal assault perpetrated by his harasser the day before. Plaintiff was not allowed to report the incident, and he was fired without further explanations.

89. The effects of the practices referenced above have been to deprive the Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee, because of his Race and Color.

90. As a direct and proximate result of the intentional violations by the Defendant of the Plaintiff's rights under 42 U.S.C. § 1981, by treating him differently from similarly situated employees, and subjecting him to racial harassment because of his Race and Color, Plaintiff has suffered damages. His damages include back pay, front pay, loss of benefits, future pecuniary loss, inconvenience, emotional pain, suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

91. The Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages because of the Defendant's discriminatory practices unless and until this Court grants relief.

92. The actions of the Defendant UNIVERSITY OF NORTH FLORIDA  and/or agents were willful, wanton, intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages according to federal law, to punish the Defendant for their actions and to deter it, and others, from such actions in the future.

93. The Defendant UNIVERSITY OF NORTH FLORIDA  is subjected to vicarious liability for the actions of its management because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which the Plaintiff was subjected to despite Defendant's knowledge that such discrimination, harassment, was occurring.

94. Plaintiff TOMAS R. WEST has retained the undersigned counsel to prosecute his claims and he is entitled to attorney's fees pursuant to 42 U.S.C. §1988, the Civil Rights Attorneys Fee Award Act.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff TOMAS R. WEST respectfully requests that this Honorable Court:

A. Enter judgment for Plaintiff TOMAS R. WEST and against the Defendant UNIVERSITY OF NORTH FLORIDA based on the Defendant's willful violations of 42 U.S.C. §1981; and

B. Award Plaintiff compensatory damages including front pay, back pay, and lost benefits; and

C. Award Plaintiff as to this count prejudgment interest; and

D. Award Plaintiff damages for the costs of litigation and filing including attorney's fees; and

E. Grant such other and further equitable relief as this court deems equitable and just and/or available pursuant to Federal Law including punitive damages.

<u>JURY TRIAL DEMAND</u>

Plaintiff TOMAS R. WEST demands trial by a jury of all issues triable as of right by a jury.

**COUNT III:**
**RETALIATION, IN VIOLATION OF THE CIVIL RIGHTS OF 1866,**
**42 U.S.C., SECTION 1981**

95. The Plaintiff TOMAS R. WEST re-adopts every factual allegation as stated in paragraphs 1-41 of this complaint as if set out in full herein.

96. The Plaintiff TOMAS R. WEST and the Defendant UNIVERSITY OF NORTH FLORIDA had a contractual relationship.

97. The Defendant UNIVERSITY OF NORTH FLORIDA precluded Plaintiff from performing the stated contractual relationship when Defendant terminated Plaintiff.

98. The Defendant terminated Plaintiff's contractual relationship in retaliation for Plaintiff's opposition to unlawful employment practices based on Race and Color, as more particularly described above.

99. The Plaintiff was unable to enjoy all the benefits, privileges, terms, and conditions of their contractual relationship.

100.     The actions of the Defendant UNIVERSITY OF NORTH FLORIDA and/or agents were willful, wanton, intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such actions in the future.

101.     The Defendant UNIVERSITY OF NORTH FLORIDA  is subjected to vicarious liability for the actions of its management because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which the Plaintiff was subjected to despite Defendant's knowledge that such discrimination, harassment, was occurring.

102.     The Plaintiff has retained the undersigned counsel to prosecute his claims and is entitled to attorney's fees pursuant to 42 U.S.C. §1988, the Civil Rights Attorneys Fee Award Act.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff TOMAS R. WEST respectfully requests that this Honorable Court:

A. Enter judgment for Plaintiff and against the Defendant UNIVERSITY OF NORTH FLORIDA based on Defendant's willful violations of 42 U.S.C. §1981; and

B. Award Plaintiff compensatory damages including front pay, back pay, and lost benefits; and

C. Award Plaintiff as to this count prejudgment interest; and

D.  Award Plaintiff damages for the costs of litigation and filing including attorney's fees; and

E.  Grant such other and further equitable relief as this court deems equitable and just and/or available pursuant to Federal Law including punitive damages.

<u>JURY TRIAL DEMAND</u>

Plaintiff TOMAS R. WEST demands trial by a jury of all issues triable as of right by a jury.

Dated: September 17, 2020

Respectfully submitted,

By:  <u>/s/ **Zandro E. Palma**</u>
ZANDRO E. PALMA, P.A.
Florida Bar No.: 0024031
9100 S. Dadeland Blvd.
Suite 1500, Miami, FL 33156
Telephone: (305) 446-1500
Facsimile:  (305) 446-1502
E-mail: zep@thepalmalawgroup.com
*Attorney for Plaintiff*