UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TOMAS R. WEST

    Plaintiff,

v.                                         CASE NO.:  3:20-cv-969-J-20MCR

UNIVERSITY OF NORTH FLORIDA
FOUNDATION, INC.,

    Defendant.
_____/

**DEFENDANT, UNIVERSITY OF NORTH FLORIDA FOUNDATION, INC.'S, MOTION TO DISMISS PLAINTIFF, TOMAS R. WEST'S, FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, UNIVERSITY OF NORTH FLORIDA FOUNDATION, INC. ("the Foundation"), pursuant to Fed. R. Civ. P. 12(b)(1), respectfully moves this Honorable Court to enter an Order dismissing the First Amended Complaint (Doc. 6) filed by Plaintiff, TOMAS R. WEST ("Plaintiff"), for lack of subject matter jurisdiction. In support thereof, the Foundation relies on the sworn statements and materials contained in the Affidavit of Justin C. Sorrell attached hereto as Exhibit A, and states as follows:

**I.    INTRODUCTION**

The Foundation submits that the Eleventh Amendment prevents the Court from exercising subject matter jurisdiction over Plaintiff's First Amended Complaint alleging three (3) constitutional claims for monetary damages under 42 U.S.C. § 1981. Alternatively, Plaintiff's First Amended Complaint is subject dismissal as University of North Florida Board of Trustees ("Trustee Board") is the only party amendable to suit pursuant to Section 1001.72, Florida Statutes.

## II.     STATEMENT OF FACTS

### A. Plaintiff's Jurisdictional Facts

On September 17, 2020, Plaintiff filed his First Amended Complaint alleging three (3) causes of action in the following correspondingly-numbered Counts: (I)  Violation Of The Civil Rights Act of 1866, 42 U.S.C. Section 1981, Discrimination Based on Race and Color; Hostile Work Environment; (II) Violation Of The Civil Rights Act of 1866, 42 U.S.C. Section 1981, Discrimination Based on Race and Color; Disparate Treatment; and (III) Retaliation in Violation Of The Civil Rights Act of 1866, 42 U.S.C., Section 1981. (Id.). Plaintiff seeks to recover monetary damages, including punitive damages, with respect to all three (3) claims. *See e.g.,* (Id. at ¶¶ 67, 69, 90-92, 100).

Plaintiff, a 32-year-old Black or African American male, alleges that he was employed by the Foundation as a full-time maintenance technician from approximately February 24, 2020 through July 28, 2020 when he was allegedly discharged in violation of Federal and State Laws. *See e.g.,* (Id., ¶¶ 6, 9,11-12). Plaintiff further alleges the Foundation is a not for profit corporation authorized to conduct business in the State of Florida and within the jurisdiction of the Court. (Id. at ¶ 7). Thus, Plaintiff concludes the Court has jurisdiction over his claims pursuant to 28 U.S.C. §§ 1331, 1334. (Id., ¶ 4).

### B. The Foundation's Jurisdictional Facts

In October 1971, the Foundation was organized as a Florida not for profit corporation for the numerous purposes including: "(a) to encourage, solicit, receive and administer gifts and bequests of property and funds for educational, scientific and charitable purposes, all for the advancement of The University of North Florida and its objectives; (b) to enlist lay support and advice to The University of North Florida; . . .." *See* (Exhibit B, p. 1). The Foundation's Bylaws

further describe its organizational structure and relationship with the University of North Florida ("UNF") in the following manner:

> The Articles of Incorporation and Bylaws shall be consistent with the applicable laws and regulations of the University, the Trustee Board, and the State, including, but not limited to, the requirements imposed on the Foundation by section 1004.28, Florida Statutes, and UNF Regulation 3.0010R, in addition to the right of the University President to monitor and control the use of the resources of the University, including, but not limited to, the name of the University, and to monitor compliance of the Foundation with state and federal laws and rules of the Trustee Board and the State.

(Exhibit C, p. 29).[1]

The Foundation's Board of Directors consists of ex-officio directors and elected directors. *See* (Id. at p. 3). The ex-officio directors are full voting members of the Foundation's Board and include: (1) UNF's President or his/her designee; (2) one or more appointee(s) of the Chair of the Trustee Board; (3) President of the UNF Osprey Club; (4) President of the UNF Alumni Association; (5) The President of the Faculty Association; and (6) President of the Student Government Association. *See* (Id.). Apart from UNF's President or his/her designee and the Trustee Board Chair representative(s), all appointments of the Foundation's Board are subject to the approval of the Trustee Board. *See* (Id. at p. 8).

In 2019, the Foundation entered into a Memorandum of Understanding with UNF providing that "[t]he Foundation exists to raise and manage private resources supporting the mission, vision and priorities of the University of North Florida […], and to provide opportunities for students and to create institutional excellence beyond state funding." *See* (Exhibit D, p. 1). In

---

[1] Article XI, Section 7 of the Foundation's Bylaws likewise provides the Foundation records are confidential and exempt from Florida public records law pursuant to Section 1004.28, Florida Statutes. *See* (Exhibit C, pp. 29-30). Any amendments to the Foundation's Bylaws are subject to policies, rules or regulations which may be established by the Trustee Board or the State. *See* (Id. at p. 27).

undertaking these functions, the Foundation does not have free reign— the Trustee Board is responsible for governance, setting priorities, and long-term plans for UNF. *See* (Id. at p. 2).[2]

With respect to fiscal matters, the Foundation's financial statements for the fiscal year ending June 30, 2020 demonstrate that it uses its funds for the advancement and support of UNF's priorities. *See generally,* (Exhibit E). To this end, the Foundation's operating budget for each fiscal year is subject to the approval of the Trustee Board and any significant changes to the budget must be reported to the Trustee Board and approved by UNF's President or his/her designee. *See* (Exhibit C, p. 19). Any expenditure by the Foundation in excess of $1,000,000 requires the recommendation of UNF Officers and prior approval of the Chair of the Finance and Facilities Committee of the Trustee Board. *See* (Id. at p. 21). On an annual basis, the Foundation is required to coordinate and provide any information necessary for UNF to fulfill its reporting obligations to the Legislature and Board of Governors of all transfers of state funds. *See* (Id.; Exhibit F).[3] If the Trustee Board, on its own initiative or at the request of UNF's President, determines that one of its organizations no longer serves the best interest or mission of UNF and decertification is appropriate, the Trustee Board may decertify the organization.[4]

## III.    APPLICABLE LEGAL STANDARD

It is a plaintiff's burden to allege, with particularity, facts necessary to establish jurisdiction. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000). Under Rule 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. "If the

---

[2] While the Foundation's Bylaws provide for the indemnification of its ex-officio directors, elected directors, and officers (Exhibit C, p. 26), the Trustee Board is legally responsible for the oversight of all aspects of UNF operations including the employment, compensation, and evaluation of all UNF employees. *See* (Exhibit D, p. 2).
[3] The Trustee Board likewise reviews the Foundation's reports concerning audits, use of UNF property, facilities, and personal services, and expenditures on an annual basis. *See* (Exhibit C, pp. 20-21).
[4] In the event of decertification, the Trustee Board would also require an accounting of the organization's assets and liabilities and take such reasonable action necessary to secure the return of all UNF's property and facilities, as requested by the Trustee Board. *See* (Exhibit F, p. 4).

court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). There are two forms of attack on subject matter jurisdiction under Rule 12(b)(1): facial attacks and factual attacks. *Morrison*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).

> A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A factual attack, however, challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Id*. On a factual attack, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). The court, consistent with its "substantial authority" to weigh evidence related to jurisdiction, may adjudicate a factual challenge under Rule 12(b)(1) without converting the motion to one brought under Rule 56 where "the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison*, 323 F.3d at 925.

*Murphy v. Sec'y, U.S. Dep't of Army*, 769 F. App'x 779, 781 (11th Cir. 2019).

"A motion to dismiss asserting the defense of Eleventh Amendment immunity presents a challenge to the court's subject matter jurisdiction." *Souto v. Fla. Int'l Univ. Found., Inc.*, 446 F. Supp. 3d 983, 989 (S.D. Fla. 2020) (*citing Baker v. Univ. Med. Serv. Assoc., Inc.*, Case No. 8:16-CV-2978-T-30-MAP, 2016 WL 7385811, at *1; *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists."; *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996)). (additional citation omitted).

IV. **ARGUMENT**

    A. **PLAINTIFF'S THREE CLAIMS UNDER 42 U.S.C. § 1981 ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY.**

The Eleventh Amendment shields states from lawsuits in federal courts. *See* U.S. Const, amend. XI. Eleventh Amendment immunity extends to arms of the state. *See Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231–32 (11th Cir. 2000). Pursuant to the Florida Constitution, the purpose of the state university system is to provide a "public service for the benefit of Florida's citizens, their communities and economies." Fla. Const, art. IX, § 7(a). While this immunity extends to state agencies, it does not extend to independent entities, such as counties or municipalities. *Miccosukee Tribe of Indians of Fla.*, 226 F.3d at 1231. Therefore, the following four (4) factors are used to determine whether the Eleventh Amendment provides immunity to a particular entity: "(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* (*citing Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir.1984); *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401–02, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979)).

The Foundation is a Direct Support Organization ("DSO") of UNF, a state agency, as defined in Section 1004.28, Florida Statutes. UNF and the Trustee Board have ultimate control over the Foundation and its operations as evidenced by Fla. Stat. § 1004.28, UNF Regulation 3.001R, and the Foundation's Bylaws and Articles of Incorporation. Furthermore, albeit not dispositive, a 1987 Florida Senate Staff report titled "A Review of Direct-Support Organizations, Their Function, and Accountability to the State," recognized the Foundation as a DSO and explained that state agencies are motivated to create DSO to authorize the solicitation of private funds to support public programs and to allow revenue expenditures on state programs outside of

the state budgeting and purchasing systems.[5] Clearly, the Foundation's existence and operations are subject to the ultimate control and authority of UNF, namely the Trustee Board and UNF's President. Thus, the Foundation is an arm of the State of Florida and is entitled to Eleventh Amendment immunity.

District Courts within the Eleventh Circuit have consistently held that a DSO, such as the Foundation, constitutes an arm of the State of Florida entitled to Eleventh Amendment immunity. *See Souto,* 446 F. Supp. 3d at 995 (finding the defendant, Florida International University Foundation, Inc., is an arm of the State of Florida entitled to Eleventh Amendment immunity); *Univ. of Fla. Research Found., Inc. v. Medtronic PLC, Medtronic, Inc.*, 2016 WL 3869877, *2-*4 (N.D. Fla. July 15, 2016) (holding that the defendant, University of Florida Research Foundation, Inc., a university entity organized under § 1004.28, is an arm of the state entitled to Eleventh Amendment immunity).[6] Accordingly, the Foundation is an arm of the State of Florida and is entitled to the same immunities as the State.

"Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by any individual against a state or its agencies in federal court." *Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1266 (M.D. Fla. 2016) (*quoting Gamble v. Fla. Dept of Health & Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir.1986)). Congress' enactment of 42 U.S.C. §§ 1981, 1983, 1985 & 1986 did not abrogate the states' Eleventh Amendment immunity. *See Debose*, 178 F. Supp. 3d at 1267 (*citing Gamble,* 779 F.2d at 1512; *Cuyler v. Scriven*, 2011 WL 861709, at *3 (M.D. Fla. Mar. 9, 2011)).The State of

---

[5] *See* (Exhibit G, pp. 25, 73-74).
[6] *See also, Elend v. Sun Dome, Inc.*, 2005 WL 8145752, *4-*5 (M.D. Fla. Dec. 22, 2005) (holding that the not-for-profit corporation established by USF, a university DSO under Fla. Stat. § 1004.28, was an arm of the state entitled to Eleventh Amendment immunity); *Plancher v. UCF Athletics Ass'n, Inc.*, 175 So.3d 724, 729 (Fla. 2015) (holding that the athletics association corporation, a university DSO, primarily acted as an instrumentality of the state and thus was entitled to sovereign immunity).

Florida has expressly retained its immunity from suit in federal court. *See* Fla. Stat. § 768.28(18); *see also, Ostroff v. State of Fla., Dep't of Health & Rehab. Servs.*, 554 F. Supp. 347, 356 (M.D. Fla. 1983) ("the Court is unable to conclude that § 768.28 was intended to authorize civil rights damages suits to be brought in federal court against the State of Florida") *Debose*, 178 F. Supp. 3d at 1267. Consequently, Plaintiff's three claims under Section 1981 warrant dismissal.

### B. PLAINTIFF'S FIRST AMENDED COMPLAINT FAILED TO NAME THE PROPER PARTY.

In the alternative, the Foundation is not a proper party as the Trustee Board is the only party amendable to suit pursuant to the instructive provisions of Section 1001.72, Florida Statutes. Section 1001.72(1) provides, in relevant part, the followings:

> Each board of trustees shall be a public body corporate by the name of "The (name of university) Board of Trustees," with all the powers of a body corporate, including the power to adopt a corporate seal, to contract and be contracted with, to sue and be sued, to plead and be impleaded in all courts of law or equity, and to give and receive donations.

Fla. Stat. § 1001.72(1).

Pursuant to the aforesaid statute, District Courts throughout the Eleventh Circuit have consistently held that a public university's board of trustees is the proper party to be named in lawsuits against the university. *See Souto*, 446 F. Supp. 3d at 998 (dismissing the plaintiff's ADA discrimination claim against Florida International University because the Florida International University Board of Trustees is the only party amenable to suit under Section 1001.72(1), Florida Statutes) (*citing, amongst others, Paylan v. Teitelbaum,* Case No. 1:15-cv-159-MW-GRJ, 2017 WL 2294084, at *2 (N.D. Fla. May 23, 2017) *report and recommendation adopted*, 2017 WL 2294083 (N.D. Fla. May 25, 2017); *Hui Li v. Univ. of Fla. Bd. of Tr.*, No. 1:14-CV-236-RS-GRJ, 2015 WL 1781578, at *2 (N.D. Fla. Apr. 20, 2015) (the defendant University of Florida Board of Trustees, which is the only University of Florida entity with the capacity to be sued. Fla. Stat. §

1001.72(1))).[7] Based on Plaintiff's failure to properly name a party in compliance with Fla. Stat. § 1001.72(1), the Foundation submits dismissal is appropriate.

WHEREFORE, Defendant, UNIVERSITY OF NORTH FLORIDA FOUNDATION, INC., respectfully moves this Honorable Court to enter an Order granting this Motion and dismissing Plaintiff's First Amended Complaint.

Dated this 29th day of January 2021.

**Respectfully submitted by,**
**VERNIS & BOWLING OF NORTH FLORIDA, PA**

*/s/ Michael A. Price*
Michael A. Price
Florida Bar No. 100581
MPrice@florida-law.com
AOuellette@florida-law.com
4309 Salisbury Road
Jacksonville, Florida 32216
Telephone: (904) 296-6751
Facsimile: (904) 296-2712
*Counsel for Defendant, University of North Florida Foundation, Inc.*

---

[7] *See also*, *Hankins v. Dean of Comms., Valencia College*, 2012 WL 7050630 at *1–2 (M.D. Fla. Dec. 21, 2012); *O'Hara v. Univ. of West Florida*, 2008 WL 4833104, at *6 (N.D. Fla. Nov. 5, 2008).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of January 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will furnish a copy of the foregoing via ECF to all counsel of record.

/s/ Michael A. Price
Michael A. Price